# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

MALCOLM McSWAIN,

    Plaintiff,

v.        Civil No. 00-1689 JP/WWD

WILLIAM A. HALTER, Acting
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### Proposed Findings

1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed August 27, 2001 **[Doc. 5]**. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff was 50 years old at the time of the administrative hearing, and alleges an inability to work since April 13, 1978 due to a low back injury.

2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications. The case was remanded by the Appeals Council, directing the Commissioner to offer Plaintiff an opportunity to submit evidence relevant to the period through June 30, 1987; for the ALJ to clarify her conclusion regarding substantial gainful activity as an auto salesman; to obtain information from a medical expert regarding Plaintiff's mental status; and for the ALJ to "articulate" her evaluation of Plaintiff's mental impairment under the special procedures set forth under 20 C.F.R. 404.1520a. Tr. at 425.

3. Plaintiff received an unfavorable ruling following a hearing on remand. The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff appeals from that denial of his application.

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the ALJ did not consider the medical evidence and also failed to follow the Appeals Council's remand order; (2) that the ALJ failed to address the Veteran's Administration's decision that Plaintiff was entitled to non-service connected disability pension retroactive to November 1, 1988; (3) that the ALJ's credibility determination was flawed; (4) that a vocational expert should have been consulted to determine Plaintiff's RFC because of nonexertional impairments; and (5) that the ALJ failed to determine that Plaintiff could hold a job for a significant period of time.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A) and § 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any

step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).[1]

7.  At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work.  Thompson at 1487 (citations omitted).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8.  Plaintiff's chief complaints are back problems and Post Traumatic Stress Disorder ("PTSD").  His back problems stem from a work-related injury sustained in October 1977 when he was dumping garbage, struck a clothesline while carrying a garbage tub weighing 100 pounds and fell backward; and PTSD from two tours of combat duty in the Vietnam War, from 1968-1969, and from 1970 and 1971.[2]

---

[1] At the first four levels of the evaluation, the claimant must show:  (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

[2] PTSD is defined as   the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity;  or witnessing an

9. His work history includes interior painter, rental repairs, interior designer, telephone sales representative, business developer and sales clerk. He last worked as a car salesman in Alaska from September 1989 to January 1990.

**First Alleged Error**

10. Plaintiff contends that the ALJ did not consider the medical evidence and also failed to follow the Appeals Council's remand order, specifically the July and September 1988 notes of Dr. Jones, a treating physician. The ALJ stated in his decision that a medical expert was not retained because, in his experience, "medical experts were reluctant to form an opinion on medical evidence that was at best 10 years old." Tr. at 19-20.

11. A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.3d 508, 513 (10th Cir. 1987)). The question here is not whether Plaintiff's back condition existed prior to the date last insured, but rather whether the impairment was disabling before that date.

12. In support of his position, Plaintiff points to a note of Dr. Jones wherein the doctor states that he would "go to bat with this man as I feel that he has probably a legitimate complaint against the insurance carrier," referring to Plaintiff's workman's compensation claim. Tr. at 247. In his July 1988 medical notes, Dr. Jones stated that Mr. McSwain's subjective complaints had not changed since 1977, when he was first injured. Tr. at 247.

---

event that involves death, injury, or a threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate. . . .The person's response to the event must involve intense fear, helplessness, or horror. . . . American Psychiatric Association Diagnostic & Statistical Manual of Mental Disorders at 424 (4th ed. 1994) (DSM-IV).

4

13. However, that statement was made based on Plaintiff's report of symptoms to the doctor. Tr. at 247. Dr. Jones also noted that no definitive exams had been done to rule out disc herniation at that time, Tr. at 247, and that Plaintiff's examination showed a "paucity of objective findings" to explain the immense amount of pain he is currently having. Tr. at 230. Dr. Serbu, a consulting physician, found no "significant findings to suggest patient's pain." Tr. at 219, 228. According to Plaintiff's statement to Dr. Serbu, he had continued to work at various jobs until May 1988. Tr. at 223.

14. A year following his back injury, Plaintiff stated he felt better with conservative treatment of his chronic lumbar strain. Tr. at 217-18. He did not seek further treatment for his back impairment until 1988, almost one year *after* his date last insured.

15. In light of Dr. Jones' complete reports, the ALJ did not err in focusing on the comments of Dr. Jones which did not support the existence of a disabling back injury prior to 1977. Tr. at 16; see Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 290 (10th Cir. 1995). Plaintiff relies on a statement made by Dr. Jones concerning Plaintiff's claim for workmen's compensation which is not dispositive of the issues in Plaintiff's claim for social security benefits, which is not supported by the rest of the medical evidence, and which is internally inconsistent with the rest of Dr. Jones' reports.

**Second Alleged Error**

16. Plaintiff contends that the ALJ failed to address the Veteran's Administration's decision that Plaintiff was entitled to non-service connected disability pension retroactive to November 1, 1988. In 1990, Mr. McSwain received a 100% non-service related disability pension from the VA.

17.     This ground for error suffers from the same infirmity as Plaintiff's first alleged error. Although the VA award reflects a present disability, it does not support the existence of a disability prior to the date last insured.   The relevant analysis here is whether Plaintiff was disabled prior to that date, regardless of whether Plaintiff is presently disabled.  See Potter v. Sec'y of HHS, 905 F.2d 1346, 1348-49 (10th Cir. 1990).

18.     The award was made retroactive back to November 1988, which was almost a year and a half *after* the date last insured.  The record indicates that Plaintiff reported PTSD symptoms existing prior to 1987.  However, as the ALJ pointed out, Tr. at 18, the medical evidence indicates that his condition had deteriorated since that time, and does not support Plaintiff's allegations that the impairment was disabling prior to the last date insured.  Tr. at 252-272.  The record also shows that Plaintiff did not seek treatment or counseling for the PTSD until March 1993, Tr. at 259, 262, almost six years after his date last insured, and three years after receiving the VA non-service related pension.

19.     Thus, I find no error in the ALJ's consideration of the VA disability award.  Cmp. e.g, Rice v. Apfel, (Table, text in WL), 2000 WL 1701446 (10th Cir. (Colo.)) (claimant failed to establish that PTSD was disabling prior to date last insured where record did not contain evidence that would support retrospective diagnosis); Adame v. Apfel, (Table, text in WL), 2001 WL 193820 (10th Cir. (Kan.)) (where record did not contain evidence that claimant was experiencing symptoms of PTSD prior to date last insured, and claimant had engaged in sporadic work activity subsequent to that date, ALJ did not err in finding that claimant was not disabled by PTSD while he was on insured status).

20.     Although the ALJ did not discuss the pension in his decision, he questioned

Plaintiff about the pension at the hearing. Tr. at 63. Plaintiff explained that 50% was given for his PTSD impairment. The ALJ also discussed the reasons for his discounting Plaintiff's allegations of disabling PTSD prior to 1987. Tr. at 18. I find this discussion sufficient to support the ALJ's determination regarding Plaintiff's PTSD. See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence).

**Third Alleged Error**

21. Plaintiff contends that the ALJ's credibility determination was flawed. Several factors are relevant in determining the credence given to a claimant's statements of disabling pain, including the levels of medication taken and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

22. The ALJ considered those factors, Tr. at 16-18, and concluded that Plaintiff's statements "regarding his limitations prior to June 30, 1987, are not supported by the medical findings." Tr. at 17. Except for a year of conservative treatment for his back injury which apparently afforded Plaintiff considerable relief, Plaintiff sought no subsequent treatment for this condition during the time he had insured status. According to doctors' reports and treatment notes, during his insured status, Plaintiff was taking either no medication or over-the-counter medication. One doctor, Dr. Hockey, felt that Plaintiff was exaggerating his symptoms. Tr. at

7

16, 243; see Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987) (it has been recognized that "some claimants exaggerate symptoms for purposes of obtaining government benefits, and deference to the factfinder's assessment of credibility is the general rule").

23. The ALJ also gave considerable attention to Mr. McSwain's vocational history, noting inconsistencies between evidence from the record and Plaintiff's allegations. Plaintiff had a history of short-lived jobs, but the record indicated that Plaintiff left these jobs because of back and leg pain, and not due to his PTSD. Tr. at 14, 142-48.

24. The ALJ noted that Plaintiff's activities included working on his motorcycles, doing household maintenance for himself and his roommate, visiting friends, and helping care for an elderly woman. Tr. at 18, 261-62. Plaintiff challenges the ALJ's consideration of daily activities as a basis for finding a lack of credibility. However, while engaging in sporadic activity does not establish that an individual can perform substantial activity, such activity can be considered in discounting subjective complaints. Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir. 1987). The record here contains a statement by Plaintiff's roommate which not only contradicts Plaintiff's statements regarding his reasons for quitting his last job as a car salesman in Alaska, (tr. 14, 457) but also demonstrates inconsistencies in his statements regarding his daily activities. Tr. at 18, 456.

25. I find that the ALJ's finding regarding credibility was conducted according to the proper legal standard, and was based on substantial evidence.

**Fourth Alleged Error**

26. Plaintiff alleges that a vocational expert ("VE") should have been consulted to determine Plaintiff's RFC because of nonexertional impairments. The ALJ determined that

8

Plaintiff had the RFC to do a wide range of light work and found him not disabled under the grids based on Rule 202.21.

27. The grids offer a short-cut method for resolving disability questions whenever the claimant can perform a substantial majority of the work in the designated RFC category. See, e.g., Ragland v. Shalala, 992 F.2d 1056, 1058 (10th Cir.1993).

28. I find that the ALJ did not err when he did not consult a VE in this case. Based on the medical findings, the ALJ concluded that Mr. McSwain was limited to lifting no more than 20 pounds occasionally and 10 pounds frequently. Tr. at 19. The ALJ also noted that despite Plaintiff's limitations regarding walking as alleged at the time of the hearing, he had stated in 1993 that he went for walks around town. Tr. at 18, 260-61.

29. Vocational testimony is not necessary unless both exertional and nonexertional impairments diminish a claimant's residual functional capacity. Cruse v. U.S. Dept. of Health & Hum. Serv., 49 F.3d 614, 619 (10th Cir. 1995). In light of the ALJ's determination that Plaintiff's alleged exertional and nonexertional limitations were not supported by the record, a determination which I have found to be based on substantial evidence (see above), there was no need to consult a VE in order to complete the step five analysis.

**Fifth Alleged Error**

30. Plaintiff alleges that the ALJ failed to determine that Plaintiff could hold a job for a significant period of time. Plaintiff also challenges the ALJ's use of the grids, which has already been addressed in my discussion of the fourth alleged error.

31. Although most of Plaintiff's jobs were of short duration, the relevant question is whether Plaintiff had the ability to work during the period he was insured. See, e.g., 20 C.F.R. §

404.1571, § 416.971 (even when work previously done cannot be considered "substantial gainful activity," it may show that claimant is able to do more work that what he actually did).

32. The ALJ questioned the Plaintiff at length regarding his earnings while he was a car salesman, which were substantially above the amount to be considered substantial gainful activity. Tr. at 18, 68-70. The ALJ was entitled to discount Plaintiff's explanation that he sold cars because people "felt sorry" for him or that someone else had used his social security number to show their earnings. Tr. at 18, 71.

33. Although Plaintiff's past jobs were described as heavy, the ALJ gave Plaintiff the "benefit of the doubt," Tr. at 19, and concluded that Mr. McSwain could perform a wide range of light work.

34. While the record shows that Plaintiff had a history of jobs lasting a short while, the relevant question is whether Plaintiff had the ability to hold a job during the period prior to his date last insured. In March 1993, he reported that until recently, he had been self-employed, operating different business where he restored and resold antiques. Tr. at 255, 259.

35. Based on the foregoing, I find all of Plaintiff's alleged errors to be without merit.

### Recommendation

I recommend that on Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc. 5]**. be DENIED and this cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE